**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| WLC, LLC d/b/a THE LEARNING COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| W. DAVID WATKINS, WATKINS STRATEGY AND RESOURCE GROUP, LLC d/b/a WATKINS PARTNERS, WATKINS & ASSOCIATES, PLLC, WATKINS & YOUNG, PLLC, WATKINS & YOUNG PROPERTIES, LLC, WATKINS PROPERTIES, LLC, EQUITY RESORTS, LLC, and STATE CAPITAL SERVICES LLC, | ) ) ) ) ) ) ) ) ) | 1:06CV129 |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendants' motion to dismiss for lack of personal jurisdiction or for improper venue under FED. R. CIV. P. 12(b)(2) and (3) [docket no. 6]. Alternatively, Defendants move to transfer venue to the Southern District of Mississippi under 28 U.S.C. § 1404(a) or for dismissal pursuant to the "first to file" rule. Also before the court is Plaintiff's motion to remand based on Plaintiff's argument that fewer than all Defendants consented to removal [docket no. 11]. Since there has been no consent, the court must deal with all dispositive motions by way of a recommended disposition. Both parties have responded to the respective motions. In this posture, the matter is ripe for disposition. For the reasons

-1-

discussed herein, the court first finds that Plaintiff's motion to remand and Defendants' motion to dismiss under the first-to-file rule have been rendered moot. Furthermore, it will be recommended that the district court grant Defendants' motion to dismiss for lack of personal jurisdiction.

## PROCEDURAL BACKGROUND

The essence of this lawsuit is that Plaintiff, a North Carolina limited liability company, entered into a verbal agreement with Defendants in August 2004 under which Defendants agreed to provide lobbying and consulting services to Plaintiff. In exchange, Plaintiff agreed to pay Defendants monthly consulting fees. Plaintiff eventually became dissatisfied with Defendants' services, and Plaintiff's attorney, on September 8, 2005, wrote a demand letter to Defendants, setting forth specific legal claims that Plaintiff intended to raise against Defendants. On December 8, 2005, Defendant Watkins Partners filed a declaratory judgment action against Plaintiff in Mississippi state court, seeking a declaration that it had not breached the parties' agreement. (*Watkins Strategy & Resource Group, LLC v. WLC, LLC d/b/a/ The Learning Together Company*, No. 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, Circuit Court of the First Judicial District of Hinds County, Mississippi, located at Conger Aff. ¶ 2.)

On January 20, 2006, Plaintiff removed the Mississippi state court suit to the United States District Court for the Southern District of Mississippi, Jackson Division. (Conger Aff. ¶ 2.) On January 4, 2006, Plaintiff filed this action, naming as Defendants David Watkins; Watkins Strategy and Resource Group, LLC d/b/a

Watkins Partners; Watkins & Associates; PLLC; Watkins & Young, PLLC; Watkins & Young Properties, LLC; Watkins Properties, LLC; Equity Resorts, LLC; and State Capital Services LLC in Guilford County Superior Court, alleging legal negligence, breach of fiduciary duty, actual and constructive fraud, and unfair and deceptive trade practices. Defendants removed the suit to this court on February 6, 2006, pursuant to 28 U.S.C. §§ 1132, 1441, and 1446. On May 23, 2006, the federal district court in Mississippi entered an order declining to hear the declaratory judgment action filed by Watkins Partners in that court.

## FACTS

The following facts are taken in the light most favorable to Plaintiff on Defendants' motion to dismiss for lack of personal jurisdiction. Plaintiff WLC, LLC, doing business as "Learning Together" (hereinafter "Learning Together"), is a North Carolina limited liability company with its principal place of business in Guilford County. Learning Together designs and sells educational products. William Cassell is Learning Together's President and CEO. Defendant David Watkins is a lawyer and Mississippi resident and is a principal of Watkins & Young, PLLC, a Mississippi law firm. Watkins is the CEO of Watkins Strategy & Resource Group, LLC, doing business as Watkins Partners. Watkins Partners is described on a web site as being a network of affiliated companies, including the named Defendants Watkins & Associates, PLLC; Watkins & Young, PLLC; Watkins & Young Properties, LLC;

Watkins Properties, LLC; Equity Resorts, LLC; and State Capital Services, LLC.[1] On the web site, Watkins Partners holds itself out to the public as a provider of legal services, accounting and financial advice, marketing and public relations services, technology consulting, and economic development and real estate investing opportunities.

Finally, Robin Williams is a former Georgia legislator who is now serving a ten-year, federal prison sentence in South Carolina after being convicted of health care fraud in 2005. (*See* Sharpless Aff., located at Ex. 5 to Pl.'s Br. Opp. Mot. Dismiss.) During the time in which consulting services were provided to Defendants, Williams was a business associate of Watkins. Williams is not a named Defendant in this lawsuit. The exact nature of the relationship between Williams and the other named Defendants is unknown, although it is clear that Watkins and Williams were working together in some capacity for some time as business associates. The court has gleaned from reviewing the record that Plaintiff paid some of its consulting fees directly to Williams, and Plaintiff is now attempting to recover those payments. In denying responsibility for returning any fees paid to Williams, Defendants maintain that Williams had no authority to act on behalf of Defendants and Defendants had

---

[1] Defendants Watkins & Associates, PLLC and Watkins & Young, PLLC are both alleged to be Mississippi LLCs operating as law firms. The remaining named Defendants are all alleged to be Mississippi LLCs that are "affiliated and doing business with" Watkins Partners. (Compl. ¶¶ 4-9.) According to David Watkins' affidavit, Defendant Watkins & Associates, PLLC is not a law firm operating independently of Watkins & Young, PLLC, but is, rather, a member of Watkins & Young, PLLC. (Watkins Aff. ¶ 5.)

no control over Williams.

Formation of the Relationship Between the Parties

In March 2004, North Carolina attorney Richard Schwartz was attending a convention in Florida, when he met with Mississippi attorney David Watkins, who he had known for several years. (Schwartz Aff. ¶ 2, located at Ex. 1 to Pl.'s Br. Opp. Mot. Dismiss.) According to Schwartz, during their conversations together while at the Florida convention, Watkins told Schwartz that he was forming a "network" of companies to carry on lobbying, legal services, and property investment businesses. (Schwartz Aff. ¶ 2.) Watkins told Schwartz that, among other things, his new business would include making use of his and others' political connections to secure appropriations for companies selling educational services and products. Watkins referred Schwartz to his web site, www.watkinspartners.com. Schwartz was impressed with the web site, which contained references to numerous companies as well as an organizational chart showing the networking of the various companies. (Schwartz Aff. ¶ 2.) Schwartz believed that Watkins' new business venture might match up well with the business needs of Schwartz's business friend William Cassell. Schwartz, therefore, decided to put Watkins and Cassell in touch with each other and helped to arrange a meeting between the two men in North Carolina to discuss a potential business relationship. (Schwartz Aff. ¶ 2; *see also* Cassell Aff. ¶ 2, located at Ex. 3 to Pl.'s Br. Opp. Mot. Dismiss.)

The North Carolina Meeting Between William Cassell on Behalf of Learning Together and David Watkins on Behalf of Watkins Partners

On May 10, 2004, after an exchange of e-mails between William Cassell and David Watkins, David Watkins and Robin Williams traveled to the offices of Learning Together in Guilford County, North Carolina, where they met with William Cassell. (Cassell Aff. ¶ 3.) The parties dispute the purpose of the May 2004 meeting in North Carolina. Plaintiff argues that Defendants traveled to North Carolina for the specific purpose of soliciting Plaintiff's business for Defendants' consulting and lobbying services. Defendants argue, on the other hand, that they traveled to North Carolina to attempt to forge a relationship between one of Defendants' clients, the "I Can Learn" company, and Plaintiff. The parties do not dispute, however, that the meeting lasted approximately two hours and that the parties did not enter any agreement during the May 2004 meeting. Rather, over the next few months the parties negotiated the terms of a verbal agreement through e-mails and telephone calls, and in August 2004 Learning Together agreed to pay Watkins and Williams $10,000 per month initially, later increasing, for "governmental relations" and legal services. More specifically, Learning Together alleges that it agreed to pay Watkins $10,000 per month beginning in August 2004 for 9 months, a total of $90,000, and thereafter $20,000 per month, and then $30,000 per month, plus other expenses incurred by Robin Williams. Compl. ¶ 15. Learning Together admits that it orally agreed to this arrangement. Watkins states that he sent Plaintiff a written agreement for the consulting services. The parties agree, however, that Plaintiff never signed the written agreement. (*See* "Agreement for Consulting Services," located at Conger Aff. Ex. 1.)

Defendants maintain that after the parties entered into the consulting agreement, Watkins, on behalf of Watkins Partners, began to lobby his education and political contacts in Mississippi and Louisiana to implement Learning Together programs in those states. (Watkins Aff. ¶¶ 20-23.) According to Defendants, Watkins primarily focused his lobbying efforts towards the State of Mississippi, where he met and communicated with, among others, Henry Johnson, who was at the time Superintendent of the Mississippi State Department of Education; Randy Pierce, who was at the time Chairman of the Mississippi House of Representatives Education Committee; and U.S. Senator Trent Lott and various members of his staff. (*Id.* ¶ 21.) Watkins also lobbied contacts in an attempt to increase Learning Together's business there. (*Id.* ¶ 22.) In addition, Watkins had discussions with the Director of the Virginia Heartland Economic Development Partnership, a workforce development and educational partnership in rural, central Virginia. (*Id.* ¶ 23; Compl. ¶¶ 17-20.) Thus, Defendants maintain that they directed their consulting efforts towards the States of Mississippi, Louisiana, and Virginia. Between August 2004 and April 2005, Plaintiff paid Williams and Watkins the agreed-to monthly fees for their consulting and lobbying services, plus other fees for various expenses incurred by Williams. Williams and Watkins ultimately failed, however, to obtain any contracts for Plaintiff, and this lawsuit ensued, in which Plaintiff alleges claims for legal negligence, breach of fiduciary duty, fraud, constructive fraud, and unfair and

-7-

deceptive trade practices.[2]

## **DISCUSSION**

## I.  Plaintiff's Motion to Remand

The court first addresses Plaintiff's motion to remand this action to state court based on the absence of consent to removal by all Defendants.  The court notes that the parties agree that the non-consenting Defendant, Watkins Partners, LLC, has now consented. (docket no. 16.)  Moreover, Plaintiff has filed a notice of dismissal as to Watkins Partners, LLC.  (docket no. 18.)  Thus, the motion to remand is moot.

## II.  Defendants' Motion to Transfer under the First-to-File Rule

The court next addresses Defendants' motion to transfer venue to the Southern District of Mississippi under the so-called "first-to-file" rule so that the federal district court in Mississippi may first address the declaratory judgment action filed by Defendant Watkins Strategy & Resource Group, LLC in that court.[3] Defendants filed their motion on February 13, 2006.  On May 23, 2006, however, the district court in Mississippi entered an order declining to hear the declaratory

---

[2]  Among other things, Plaintiff maintains that Defendant David Watkins was acting as both Plaintiff's attorney-in-fact and as Plaintiff's business advisor, and at least the legal negligence claim is directed to Watkins in that capacity. David Watkins denies that he was acting as Plaintiff's attorney-in-fact during the parties' relationship.

[3]  Under the "first-to-file" rule, "where, if a Court must decide between two parallel cases which of the cases should go forward, generally the first case filed should be chosen."  *SAS Inst., Inc. v. PracticingSmarter, Inc.*, 353 F. Supp. 2d 614, 617 (M.D.N.C. 2005).  Moreover, the fact that one suit is for a declaratory judgment does not change the general rule that the first-filed case should go forward.  *Id.*

-8-

judgment action and dismissed the case without prejudice. (Opinion and Order, *Watkins Strategy & Resource Group, LLC v. WLC, LLC d/b/a/ The Learning Together Company*, No. 3:06cv44BS (May 23, 2006 S.D. Miss.), located at docket no. 26.) Thus, Defendants' motion to transfer under the first-to-file rule is moot.

III. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

The court next addresses Defendants' motion to dismiss for lack of personal jurisdiction. When a court's exercise of personal jurisdiction is challenged pursuant to a Rule 12(b)(2) motion, the plaintiff must prove the existence of a ground for jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If jurisdiction turns on disputed facts, the court may conduct an evidentiary hearing, or postpone ruling on the motion pending receipt of evidence relating to jurisdiction at trial. *Id.* If the court, as here, considers the jurisdictional challenge based solely on motion papers, supporting legal memoranda, and pleadings, the plaintiff need only make a prima facie showing of a sufficient jurisdictional basis. *Id.* When considering a jurisdictional challenge based on the record, the court must construe allegations contained in the pleadings in the light most favorable to the plaintiff, assume credibility, and the most favorable inferences stemming from the evidence must be drawn in favor of the existence of jurisdiction. *Id.* The Fourth Circuit has held, however, that "[a]lthough it is true that the plaintiff opposing a Rule 12(b)(2) motion to dismiss for lack of jurisdiction is entitled to have all reasonable inferences from the parties' proof drawn in his favor, district courts are

not required . . . to look solely to the plaintiff's proof in drawing those inferences." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).

To determine whether personal jurisdiction is proper, the court must engage in a two-part inquiry. First, the long-arm statute of North Carolina must provide a statutory basis for the assertion of personal jurisdiction. Second, the exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* Courts have made clear that North Carolina's long-arm statute is to be construed liberally "to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause."[4] *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Century Data Sys., Inc. v. McDonald*, 109 N.C. App. 425, 427, 428 S.E.2d 190, 191 (1993)).

For a state to exercise personal jurisdiction over a non-resident defendant, due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d

---

[4] Thus, courts will often bypass the first step and proceed directly to the due process inquiry, asking whether the defendant has minimal contacts with North Carolina such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See, e.g., CBP Res., Inc. v. Ingredient Res. Corp.*, 954 F. Supp. 1106, 1108 (M.D.N.C. 1996) (citing *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993)); *but see also Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 522-23 (M.D.N.C. 1996) (following the rule that "both prongs of the test must be analyzed") (citing *English & Smith v. Metzger*, 901 F.2d 36 (4th Cir. 1990)).

939, 945 (4th Cir. 1994).  When examining the sufficiency of a non-resident defendant's contacts, "[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *Id.*  In short, jurisdiction is proper when a relationship exists between the defendant and the forum "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be exercised either specifically or generally. *Slaughter v. Life Connection of Ohio*, 907 F. Supp. 929, 933 (M.D.N.C. 1995). Specific jurisdiction is established where the forum state asserts personal jurisdiction over a defendant in a suit "arising out of or related to" that defendant's contacts with the state.  *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).  By contrast, general jurisdiction is established where the defendant's contacts with the forum state have been systematic and continuous even though the contacts do not have any relation to the plaintiff's claim.  *Id.*

Here, Plaintiff does not assert, and the alleged facts do not support a finding, that Defendants' contacts with North Carolina in this case are sufficiently "continuous and systematic" to subject Defendants to general jurisdiction.  The court must, therefore, determine whether Defendants' contacts with North Carolina are sufficient to subject them to specific jurisdiction.  To establish specific jurisdiction, Plaintiff must show: (1) the extent to which Defendants "purposefully availed"

-11-

themselves of the privileges of conducting activities in North Carolina; (2) whether the claims arise out of Defendants' activities purposely directed at North Carolina; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). The "purposeful availment" requirement ensures that defendants "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). It requires conduct by defendants in relation to the forum state "such that [they] should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297.

In addition to the purposeful availment requirement, due process requires a sufficient nexus between defendants' contacts with the forum state and the nature of the claims asserted. *Helicopteros*, 466 U.S. at 415-16; *ALS Scan,* 293 F.3d at 712. Specifically, a plaintiff's claims must "arise out of" or "relate to" the defendant's contacts with the forum state. *Helicopteros,* 466 U.S. at 414 n.8. In determining whether a claim is sufficiently related to forum-related activities, circuits have applied different tests. *Yates v. Motivation Indus. Equip. Ltd.,* 38 F. App'x 174, 178 n.6 (4th Cir. 2002). For instance, the Sixth Circuit takes a more liberal view and "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, [it] requires only 'that the cause of action, of whatever type, have a

-12-

substantial connection with the defendant's in-state activities.'" *Bird v. Parsons,* 289 F.3d 865, 875 (6th Cir. 2002) (citing *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir. 1989)). The Ninth Circuit, on the other hand, utilizes a more restrictive "but for" test and "considers whether [a plaintiff's] claims would have arisen but for [the defendant's] contacts with [the forum state]." *Doe v. Unocal Corp.,* 248 F.3d 915, 924 (9th Cir. 2001).

A. Specific Jurisdiction as to the Various Named Business Entities as Defendants

Defendants first maintain that Plaintiff has produced no evidence to support a finding of personal jurisdiction as to the various corporate Defendants named in the complaint other than Watkins Partners. The court agrees. In support of finding personal jurisdiction against Defendants Watkins & Associates; PLLC; Watkins & Young, PLLC; Watkins & Young Properties, LLC; Watkins Properties, LLC; Equity Resorts, LLC; and State Capital Services LLC, Plaintiff maintains that throughout the relationship between the parties, Williams and Watkins held themselves out as working through these various Defendant companies to serve Plaintiff. Plaintiff points to a web site maintained by Watkins for Watkins' consulting and lobbying business and notes that the web site refers to ICC/State Capital Services, LLC, Watkins & Associates, PLLC, and Watkins Partners as being "affiliated with a network of entrepreneurs and lawyers throughout the South with the breadth of experience that can satisfy your business needs." More specifically, while the parties worked together in 2004, the web site advised the viewer that

-13-

> [t]his is the website for the Watkins Partners® network of affiliated companies, including Watkins Strategy and Resource Group LLC, Watkins & Associates, PLLC, W2 Flightline LLC, and State Capital Services, LLC. Watkins Partners is a network of strategically aligned firms and companies that provide legal services, accounting and financial advice, marketing and public relations services, technology consulting, and economic development and real estate investing opportunities. Watkins and Associates PLLC is a law firm with affiliated offices in Jackson, New Orleans, Mobile, Dallas and Washington, D.C.

(Cassell Aff., Pl.'s Ex. 3A, at p. 4.)

> Watkins Strategy and Resource Group, LLC is the corporate name of the Watkins Partners® network of companies, including Watkins & Associates PLLC, International Consulting Corporation (ICC), State Capital Services LLC, W2 Flight Operations, Inc., Watkins Properties, LLC and Couhig Partners, LLP.

(Cassell Aff., Pl.'s Ex. 3A, at p. 4.) On the web site, David Watkins was identified as "President and CEO of Watkins Strategy and Resource Group LLC, the holding company for the array of affiliated companies that comprise the network," and of "Watkins Partners®." (Cassell Aff., Pl.'s Ex. 3A, at pp. 2, 4, 5, 6, 11.) Robin Williams was represented as the "CEO" of ICC/State Capital Services, LLC, which was Watkins Partners' "affiliated company" and which "offer[ed] a powerful network of skilled and experienced governmental relations and public sector marketing specialists throughout the United States." (Cassell Aff., Pl.'s Ex. 3A, at p. 8.) Plaintiff further notes that later in 2004 the web site declared:

> Our affiliated company, State Capital Services, LLS (SCS) offers a powerful network of skilled and experienced governmental relations and public sector marketing specialists throughout the United States. Former Georgia Legislator, Robin Williams, is the president of SCS . . . . State Capital Services has operations in 27 states and is prepared to take your business to

-14-

a new level.

(Cassell Aff., Pl.'s Ex. 3C, at p. 21.)  In further describing the integration of law practice with lobbying and other businesses, the web site stated:

> Watkins and Young PLC is a network of firms and companies designed to serve the needs of modern business enterprises by integrating business and law to achieve the clients['] goals. . . . [W]e offer all the services that clients need to build and maintain a successful business, such as marketing, governmental relations, accounting, real estate and banking, as well as law. . . .  We are part of a network of lawyers and professionals throughout the [S]outh prepared to handle all of your business needs . . . .

(Cassell Aff., Pl.'s Ex. 3C at p. 2.)

Plaintiff maintains that the court may assert personal jurisdiction as to these various entity Defendants because of their representation as "affiliated" companies. The court disagrees.  Plaintiff asserts in conclusory fashion in the complaint that

> "[a]t all times relevant to the Complaint, Watkins acted in his capacity as the Chief Executive Officer and Principal of Watkins Strategy and Resource Group, LLC d/b/a/ Watkins Partners, and the network of affiliated companies, as Chairman of Equity Resorts, LLC and as a principal of the law firm, Watkins & Young, PLLC, and Watkins & Associates, PLLC, and his actions and conduct *are imputed to the defendant-companies*."

(Compl. ¶ 11 (emphasis added).)  Plaintiff's allegation that David Watkins' actions may be imputed to the Defendant-companies is a mere legal conclusion which is not sufficient to withstand the Defendant-companies' motion to dismiss based on lack of personal jurisdiction.  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (refusing to accept the plaintiffs' conclusory allegations that a subsidiary was an agent of its parent).  Moreover, the mere fact that a web site describes "a network

-15-

of affiliated companies" and individuals does not justify asserting personal jurisdiction against each of those companies or individuals based on the assertion of personal jurisdiction as to one of them.  *See, e.g., R&B Falcon Drilling (Int'l & Deepwater), Inc. v. The Noble Denton Group,* 91 Fed. App'x 317, 321 (5th Cir. 2004) (unpublished opinion) (affirming the district court's dismissal of affiliated companies for lack of personal jurisdiction where the district court held that the foreign companies' maintenance of a passive website did not give rise to personal jurisdiction and that the various companies were not so interrelated that one company's actions could be imputed to another company).  Other than merely referring to the web site, Plaintiff has failed to provide the court with any facts to show that Watkins was acting as an agent for any of these Defendant companies other than Watkins Partners, that Watkins' associate Robin Williams was acting as an agent for any of these Defendants, or that the corporate veil between the "network of affiliated companies" as described on the web site should be pierced. *See Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 647 (D.S.C. 2005) (stating that corporate defendants will not be imputed with the contacts of another unless the plaintiff first establishes grounds to pierce the corporate veil). Accordingly, any contacts of Watkins, Williams, and Watkins Partners with North Carolina are not imputed to the remaining Defendants.

In any event, David Watkins asserts in his affidavit that there is no such company as Equity Resorts, LLC.  (Watkins Aff. ¶ 8.)  He states that as part of his

-16-

long-term plans he intended to create a company named Equity Resorts, LLC to pursue real estate development and that he has reserved an Internet domain name titled "www.equityresorts.com" for "this future business," but the business has not yet been created. (Watkins Aff. ¶ 8.) Similarly, Watkins states that he also intended to create a company named State Capital Services, LLC to pursue multi-state, public sector marketing and lobbying activities, and that he has reserved an Internet domain name for the company, but that the business has not yet been created. (Watkins Aff. ¶ 8.) Watkins further asserts that he is not aware of the existence of, and has no relationship with, a company called Watkins & Young Properties, LLC, and that he also has no relationship with Defendant Watkins Properties, LLC. (Watkins Aff. ¶¶ 6, 7.) This leaves David Watkins, Watkins Partners, and David Watkins' law firm Watkins & Young, PLLC, as the only remaining Defendants.[5] The court will, therefore, confine its analysis to whether specific personal jurisdiction may be asserted against these remaining Defendants.

B. Specific Personal Jurisdiction as to the Remaining Defendants

The court first notes that Plaintiff is attempting to proceed on a theory that David Watkins was not only acting as an agent for Watkins Partners when the parties entered into their consulting agreement, but that Watkins was also acting as an attorney-in-fact to Plaintiff. This lawsuit specifically arises out of the parties'

_____

[5] Defendant David Watkins does not deny that in his dealings with Plaintiff he was acting as the agent for Defendant Watkins Partners. (Watkins Aff. ¶ 15.)

relationship pursuant to the consulting agreement, and the record clearly shows that David Watkins entered into the consulting agreement in his capacity as an agent for Watkins Partners and not in his capacity as an attorney for the Watkins & Young law firm.[6]  Thus, the court will confine its jurisdictional analysis to the contacts of David Watkins in his capacity as an agent for Watkins Partners.[7]

Defendants David Watkins and Watkins Partners maintain that their contacts with North Carolina are too attenuated to support a finding of personal jurisdiction. In support of this argument, Defendants maintain that (1) a third party, attorney Richard Schwartz, initiated the contact between the parties; (2) Defendants traveled to North Carolina in May 2004 for the purpose of forging a relationship between "I Can Learn" and Plaintiff Learning Together and not for soliciting Plaintiff's business for Defendants' consulting and lobbying services; (3) the parties did not enter into their verbal agreement during the May 2004 meeting in North Carolina, but instead negotiated the terms of the agreement over the telephone and through e-mails over the course of the next few months; (4) a written draft of the agreement–which Plaintiff never signed, but which would have memorialized the terms of the parties' verbal agreement–was prepared in Mississippi and contained a choice-of-law clause

---

[6]  Indeed, Watkins points out in his affidavit that he is not licensed to practice law in North Carolina and that his law firm confines its practice to Mississippi.  Watkins Aff. ¶ 3.

[7]  In any event, the personal jurisdiction analysis would be no different as applied to David Watkins' contacts in his capacity as an attorney.

designating Mississippi as the governing law in the event of a dispute; (5) over the course of nine months, David Watkins and William Cassell communicated by telephone and e-mail, but not all of those communications occurred between Mississippi and North Carolina because both Watkins and Cassell traveled frequently; (6) the verbal agreement between the parties did not contemplate any performance of services in North Carolina or affecting North Carolina, and (7) Defendants' services were in fact performed primarily in, and were directed to, Mississippi, Louisiana, and Virginia. Defendants maintain that these contacts are insufficient as a matter of law to create personal jurisdiction under binding Fourth Circuit precedent. For the following reasons, the court agrees that Defendants' contacts with North Carolina do not support the exercise of personal jurisdiction over them.

Defendants' Purposeful Contacts with the Forum State

In assessing whether the court may assert specific jurisdiction over Defendants, the court must examine the extent to which Defendants "purposefully availed" themselves of the privileges of conducting activities in North Carolina, and whether the claims arise out of Defendants' activities purposely directed at North Carolina. As part of this analysis, courts have considered various factors, such as who initiated the contact between the parties; where the contract was entered into and whether the contract was to be performed in the forum state; the number of Defendant's contacts with the forum state that specifically led to the dispute between

-19-

the parties; and whether the agreement between the parties contemplated a single transaction or an ongoing relationship. The court will begin its analysis by addressing the circumstances of the single visit that Defendants made to North Carolina–the May 2004 meeting. First, as noted, the parties dispute the purpose of the meeting. Plaintiff maintains that David Watkins traveled to North Carolina for the May 2004 meeting with the specific purpose of soliciting Plaintiff's business. The complaint alleges that at the meeting Watkins and Williams represented to Plaintiff that they were in a partnership together and that they, and their affiliated companies, could secure a $3 million "earmark" for Plaintiff through their relationship with U.S. Senator Trent Lott. (Compl. ¶ 14.) According to Plaintiff, Watkins and Williams also represented that they could secure additional sales for Plaintiff's products through various state governments and agencies. (*Id.*)

Defendants contend, on the other hand, that the May 2004 meeting was unrelated to the events giving rise to this action. Watkins asserts that he and Williams traveled to North Carolina for the May 2004 meeting to discuss a potential strategic alliance between Watkins' client "I Can Learn" and Plaintiff Learning Together. (Watkins Aff. ¶¶ 11-15.) Defendants maintain that it was only after Plaintiff rejected the idea of this alliance, and after Watkins returned to Mississippi, that the parties began discussing a consulting relationship between Watkins Partners and Learning Together. (*See id.* ¶¶ 15-17.) Defendants maintain, therefore, that Watkins' single visit to North Carolina is not even related to the events

-20-

giving rise to Plaintiff's claims and should not be considered in the court's specific personal jurisdiction analysis.

For the purpose of Defendants' motion to dismiss for lack of personal jurisdiction, the court must construe all relevant pleading allegations in the light most favorable to Plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Combs*, 886 F.2d at 676. Therefore, the court will assume that David Watkins traveled to North Carolina for the reason offered by Plaintiff–to obtain Plaintiff's business for Defendants' consulting and lobby services, and this fact weighs in favor of asserting personal jurisdiction over Defendants. The court further notes, however, that the parties agree that they did not enter into the verbal consulting agreement on that day. The parties agree that after the May 2004 meeting, which was about two hours long, Cassell and Watkins communicated through telephone and/or e-mail from their respective locations in negotiating the final, verbal agreement between the parties, and they did not reach this final, verbal agreement until August 2004. Plaintiff notes that the parties exchanged e-mails and telephone calls in furtherance of the consulting agreement and that some of those e-mails and telephone calls were made from Defendants to Plaintiff in North Carolina. Courts have held, however, that an exchange of communications between two parties, one of whom is located in the forum state, in furtherance of a contract, will not generally constitute purposeful contact with the forum state for purposes of jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986);

-21-

*see also generally Worldwide Ins. Network, Inc. v. Trustway, Ins. Agencies, LLC*, No. 1:04cv00906, 2006 WL 288422, at *5 (M.D.N.C. Feb. 6, 2006).

Plaintiff also points to the fact that Defendant Watkins Partners maintained a web site throughout the time that Watkins was allegedly soliciting business from Plaintiff. Plaintiff concedes that the web site does not, in and of itself, establish personal jurisdiction over Defendants. Plaintiff argues, however, that the web site is merely additional evidence of Defendants' solicitation for business in states outside of Mississippi and that it tends to show that Defendants could have reasonably anticipated being haled into court in North Carolina. Plaintiff specifically points to the representations on the web site that Defendants had "operations in all 50 states," or "operations in 27 states," and that Defendants had physical offices in numerous cities "through the [S]outh with the breadth of experience that can satisfy your business needs." (Cassell Aff., Pl.'s Ex. 3A, at pp. 2, 4, 5, 6, 8, 11; Pl.'s Ex. C, pp. 21, 30.)

Under circuit court precedent, the nature of the web site does not create a reasonable anticipation of Defendants being haled into court in North Carolina, and this court does not find it particularly relevant in the specific jurisdiction analysis. For instance, in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, the Fourth Circuit held that where the nature of a web site was "passive" in that it merely posted information that was accessible to users in other jurisdictions, the defendant had not, through the web site, purposefully availed itself of the privilege of conducting business or other

-22-

transactions in the forum state. 293 F.3d 707. This court finds that, like the web site in *ALS Scan*, the web site here was passive and merely provided information to persons accessing the web site. Furthermore, the fact that the web site stated that Defendants operated throughout states in the South does not alter that fact. Finally, as the allegations in this case do not arise out of Plaintiffs' use of the web site, the web site is irrelevant to any consideration of specific personal jurisdiction.

Next, the court notes that in the personal jurisdiction analysis, the Fourth Circuit has given great weight to the question of who initiated the contact between the parties. If the defendant initiated the contact, then courts are more likely to assert personal jurisdiction over the defendant. *See Diamond Healthcare of Ohio, Inc v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000) (finding no personal jurisdiction where the plaintiffs initiated the parties' contractual relationship); *see also Cortex Surveillance Automation v. Security Integrators & Consultants, Inc.*, No. 1:05cv562, 2006 WL 994951, at *3 (M.D.N.C. Apr. 12, 2006) (asserting personal jurisdiction where the defendant initiated contact with the plaintiff in North Carolina, where the contract contemplated an ongoing relationship, where the agreement contained a choice-of-law provision designating North Carolina law as the governing law, and where the defendant's president traveled to North Carolina on two occasions); *Cree, Inc. v. Excel*, No. 1:02cv00319, 2004 WL 241508, at *3 (M.D.N.C. Feb. 6, 2004) (asserting personal jurisdiction where the defendant made the initial sales call to the plaintiff in North Carolina and where the contract contemplated the

-23-

shipment of goods to North Carolina and a one-week period of on-site installation and training requiring four to five of the defendant's employees to travel to North Carolina); *Burlington Indus., Inc. v. Yanoor Corp.*, 178 F. Supp. 2d 562, 567 (M.D.N.C. 2001) (asserting personal jurisdiction where the defendant initiated contact with the plaintiff in North Carolina and where portions of the contract were negotiated in North Carolina). Here, the relationship between the parties arose out of the fact that North Carolina attorney Richard Schwartz ran into David Watkins at a convention in Florida. After talking to Watkins about Watkins' new business venture, Schwartz brought Plaintiff into the picture and set up a meeting in North Carolina between the parties. Therefore, it cannot be said that Defendants initiated contact with Plaintiff. Rather, it appears that Schwartz, as a third party, initiated the dealings between the parties, and this factor appears to be neutral in the personal jurisdiction analysis.

Another factor to be considered in the personal jurisdiction analysis is whether the parties contemplated that the contract would be performed in the forum state. Where performance under a contract was intended to be performed outside of the forum in question, courts have been reluctant to assert personal jurisdiction over non-resident defendants. *See, e.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir. 2000) (finding no personal jurisdiction over the defendant where the contract called for performance mainly outside of the forum, even though some acts required or performed by the defendant

necessitated its contact with the forum). Here, it appears to be undisputed that the agreement contemplated that Defendants would direct and perform their lobbying and consulting services outside of North Carolina. Indeed, Defendants have submitted affidavits attesting that the lobbying efforts and consulting services were primarily performed in Mississippi, Louisiana, and Virginia.[8] Moreover, it appears that the contacts between Defendants and North Carolina arose merely because Plaintiff is located in North Carolina and not because Defendants purposely directed their activities towards the State of North Carolina. *See Sea-Roy Corp. v. Parts R Parts, Inc.,* No. 9:94cv00059, 1996 WL 557857, at *6 (M.D.N.C. July 30, 1996) ("[I]t is necessary to distinguish between a defendant's acts which are aimed at a plaintiff who is located in the forum and those which are aimed at the forum itself.") (citations omitted). The fact that the parties did not contemplate that the agreement would be performed in this state weighs against a finding of personal jurisdiction against Defendants. *See, e.g., Worldwide Ins. Network*, 2006 WL 288422, at *5 (finding no

---

[8] Plaintiff has contested this assertion only in that Plaintiff argues that the agreement contemplated that few, if any, lobbying services were to be directed towards or in Mississippi. Plaintiff maintains that the agreement contemplated, instead, that Defendants would direct their lobbying efforts towards Washington, D.C., and for securing business in various southeastern states, particularly Virginia. Notably, Plaintiff does not argue that the agreement contemplated that the lobbying services would be performed in North Carolina or that the services were *in fact* performed in this state. Plaintiff further argues that personal jurisdiction is proper because Plaintiff's business suffered the damages for which it now seeks recovery in North Carolina. The court observes that if this latter factor were a basis for finding personal jurisdiction, then personal jurisdiction would be found in every case in which a plaintiff brought suit in the state where the plaintiff conducted its business.

personal jurisdiction where "all the work to be performed by Defendants pursuant to the contract was to take place solely in the state of Georgia" and where "all of [one defendant's] employees [and agents] work only in Georgia").

Finally, another factor to be considered in the personal jurisdiction analysis is whether the agreement between the parties contemplated a single transaction or an ongoing relationship. The finding of an ongoing relationship, as opposed to a single transaction, weighs towards an assertion of personal jurisdiction. *See, e.g., Chung v. NANA Dev. Corp.,* 783 F.2d 1124, 1127-28 (4th Cir. 1986) (distinguishing between a single transaction in the forum state and a "substantial and continuing relationship") (citing *Burger King*, 471 U.S. 487); *see also CBP Res., Inc. v. Ingredient Res. Co.*, 954 F. Supp. 1106, 1109 (M.D.N.C. 1996) (finding sufficient contacts where the defendant entered into a five-year agreement with the North Carolina plaintiff, where the defendant initiated contact with the plaintiff, where the defendant was responsible for shipping a product out of North Carolina, and where the agreement contained a choice-of-law clause designating North Carolina law as the controlling law). In this case, the agreement for the consulting services contemplated an ongoing relationship between the parties rather than a single transaction. Thus, this factor weighs in favor of asserting personal jurisdiction over Defendants.[9]

---

[9] Defendants also point to the written agreement drafted by Defendants, and they note that it contained a choice-of-law provision designating Mississippi as the governing law in the event of a dispute between the parties. Since, however, Plaintiff

After considering carefully all of the above factors in the personal jurisdiction analysis, the court concludes that there is not a sufficient basis to assert specific personal jurisdiction over Defendants David Watkins and Watkins Partners. As Defendants note in their brief, the facts of this case are substantially similar to those in *Le Bleu Corp. v. Standard Capital Group, Inc.,* 11 Fed. App'x 377 (4th Cir. 2001) (unpublished), in which the Fourth Circuit found that personal jurisdiction was lacking despite that the defendants in that case sent representatives to North Carolina on a single occasion related to the underlying dispute. Because the facts in *Le Bleu* are so similar to the facts in this case, a discussion of *Le Bleu* is appropriate here.

In *Le Bleu*, an independent venture capital consultant in North Carolina contacted the defendant Standard Capital Group, Inc. ("Standard"), a California corporation, regarding a $20 million capital contribution sought by the plaintiff, Le Bleu Corporation ("Le Bleu"), a North Carolina corporation. *Id.* at 378. The third-party consultant submitted Le Bleu's financial records to Standard for review and traveled to California to meet with Standard. *Id.* Subsequently, Standard sent two of its employees to North Carolina to meet with the third party consultant and Le Bleu's president and to view Le Bleu's operations. *Id.* Standard thereafter mailed Le Bleu a signed agreement, which provided that Standard would serve as Le Bleu's financial advisor in connection with either the private placement of debt or the

---

never signed this agreement, and since the parties agree that they were operating under the terms of a verbal agreement only, the court does not consider this factor in its personal jurisdiction analysis.

arrangement of a strategic partnership and related financing. *Id.* In exchange for Standard's consulting services, Le Bleu agreed to provide Standard, among other things, a non-refundable retainer fee. *Id.* Le Bleu signed the agreement in North Carolina and mailed it to Standard in California. *Id.* at 379. The agreement contained a "Governing Law" clause, which provided that the agreement would be governed and construed in accordance with California law. The agreement did not specify where Standard would perform the work related to the transaction. *Id.*

Le Bleu then sent Standard a $100,000 retainer, and Standard began work in California on a memorandum related to the transaction. *Id.* Although Standard took a draft memorandum to North Carolina for Le Bleu's review, the memorandum was completed in California, and none of the fourteen potential investors to whom the memorandum was sent were located in North Carolina. *Id.* Four investors, all located in Los Angeles, responded, and arrangements were made for a joint team of Standard and Le Bleu employees to make presentations to these investors in Los Angeles. *Id.* Before the presentations could take place, however, Le Bleu sent Standard new financial figures which, according to Standard, reflected a significant net change in Le Bleu's financial position. Standard canceled the meetings in California, and Le Bleu requested that Standard return the $100,000 retainer. *Id.* When Standard refused to return the retainer, Le Bleu sued Standard in a North Carolina state court, and Standard removed the case to this court.

On Standard's motion to dismiss for lack of personal jurisdiction, Le Bleu

-28-

argued that personal jurisdiction could be found on the basis that the parties exchanged some mail and telephone calls, Standard's employees made two visits to North Carolina, and Le Bleu mailed a payment from North Carolina and signed the contract in North Carolina. This court concluded that Le Bleu had shown only a "negligible connection with North Carolina," and, thus, had failed to make a prima facie showing that specific jurisdiction over Standard was proper in North Carolina. The Fourth Circuit affirmed on appeal. In finding that personal jurisdiction was lacking, the Fourth Circuit observed that a

> contract with a resident of a forum state does *not* automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract. Rather, for purposes of the due process analysis, the *contract* must have a "substantial connection with the State," so that the "quality and nature" of a defendant's relationship to the forum "can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' "

*Id.* at *2 (citations omitted) (emphases in original) (quoting *Burger King,* 471 U.S. at 479-80 (citations omitted)); *accord Diamond Healthcare*, 229 F.3d at 450 (finding no personal jurisdiction where the defendant "did not seek out the forum corporation, it did not anticipate that the forum corporation would provide its services predominantly from the forum, it did not agree to a contract governed by forum law, and its course of performance under the Contract demonstrates that it could not expect to be haled into Court in [the forum]").

Here, as in *Le Bleu*, the court finds that the facts in this case lead to a conclusion that the court may not assert specific jurisdiction over Defendants David

-29-

Watkins and Watkins Partners. That is to say, (1) Defendants only made one visit to North Carolina over the course of the parties' relationship; (2) the contract between the parties was not entered into in North Carolina, but, rather the terms were negotiated by e-mail and over the telephone from both North Carolina, Mississippi, and other states; (3) a third party initiated the contact between the parties; and (4) the contract contemplated performance outside of North Carolina and was performed outside of North Carolina. In the aggregate, all of these factors point to a finding that the court may not assert personal jurisdiction over Defendants in this case.

## CONCLUSION

For the reasons stated herein, it is **RECOMMENDED** that the district court **GRANT** Defendants' motion to dismiss (docket no. 6) for lack of personal jurisdiction. Moreover, since the court lacks personal jurisdiction over Defendants, Defendants' alternative motion to transfer venue has been rendered moot. Finally, Plaintiff's motion to remand (docket no. 11) and Defendants' motion to dismiss under the first-to-file rule have also been rendered moot.

WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
June 12, 2006.

-30-